THE STATE v. MIKE DONELLI, Appellant.—22 S. W. (2d) 781.

Division Two, December 11, 1929.

*Waldo Edwards,* for appellant.

*Stratton Shartel,* Attorney-General, and *Henry Depping,* Assistant Attorney-General, for respondent.

202

HENWOOD, C.—By an information filed in the Circuit Court of Macon County, the defendant was charged with the unlawful manufacture of "hootch, moonshine, corn-whiskey." He was convicted and sentenced to imprisonment in the penitentiary for two years, and, in due course, appealed.

At the time in question and for sometime prior thereto, the defendant owned a small tract of land in the south part of the town of Keota, in Macon County, Keota being south of the town of Bevier, in Macon County. The dwelling house of six rooms, in which the defendant and his family lived, was on the east side of the premises. On the west side of the premises were located a frame building of one-room, with a rock basement, a cave, a barn, and a coal-house. All of the premises were in the same inclosure. The frame building was about thirty yards west of the dwelling house, and the cave about twenty or twenty-five yards west of the frame building. About four o'clock in the afternoon of December 21, 1927, the sheriff (Morton S. Meisner) and his deputy (Jack Williams) went to the defendant's dwelling house with a search warrant. The defendant and his wife and eight or ten children were at home. The sheriff's search of the dwelling house disclosed neither intoxicating liquor nor equipment used in making intoxicating liquor. His deputy broke the lock on the door of the cave, on the west side of the premises, and found there ten barrels of mash and a lighted oil stove. They then "broke open" the door of the frame building, on the west side of the premises, and "found a still upstairs, and one downstairs in the basement." The still found upstairs was "setting up" but not in operation. The still in the basement had a fire under it, was full of mash, fully equipped, connected up, and operating, with "whiskey

running into a jar that was sunk into the ground." They also found twenty-five barrels of mash and five gallons of moonshine whiskey in the basement. The still found in operation in the basement, and a bottle of the moonshine whiskey found there, were exhibited at the trial. The sheriff testified that he did not know the defendant, prior to the search; that he did not know who owned nor who was in possession of the premises on which the stills, mash and moonshine whiskey were found; and that the search was made at the suggestion of his deputy (Jack Williams). The deputy sheriff testified that he had known the defendant for ten or fifteen years, and that the defendant was called "Mike; Monkey Mike." He was further examined as follows:

"DIRECT EXAMINATION:

"Q. Did you see the defendant? A. *I did; yes, sir.*

"Q. Where was he? A. *He was on the porch.*

"Q. Porch of the dwelling house? A. *Yes, sir.*

"CROSS-EXAMINATION:

"Q. You are not telling this jury that Mike or Monkey Mike (the defendant) manufactured that liquor, are you? A. *No, sir, I am not.*

"Q. No, sir. The fact of the matter is you don't know the fellow who was running this still and made that liquor? A. *I do. I didn't see him there.*

"Q. He wasn't there? A. *No, sir; not in either one of the buildings.*

"Q. Didn't see him there. And these premises on which you found this equipment and liquor was about thirty, or twenty-five or thirty, yards west of where Mike Donelli lives, Jack, wasn't it? A. *Yes, sir.*"

The defendant took the stand in his own behalf, and, according to his testimony, he knew nothing of the stills, mash and moonshine whiskey until after the search, and was not, in any way, connected therewith. He was fifty-three years of age and had eleven children. He had lived in Macon County for twenty-three years and had been the owner of the premises in question for several years. He bought the east part of the premises, on which his dwelling house was located, and the west part, on which the frame building, cave, barn and coal-house were located, at different times and from different persons. In April, 1927, he leased the west part of the premises, on which the stills, mash and moonshine whiskey were found, to Joe Testi. The lease was written by George Thompson, a notary public, and was signed and executed at the Peoples Bank in the town of Bevier. Joe Testi "lived in Keota long time ago and he left and come back again." He had not seen Joe Testi since the day the

lease was signed. He (the defendant) had worked as a coal miner in the Bevier coal fields for a long time, and, since the coal mines suspended operation, he had been working for a brick contractor at Glen Ellyn, Illinois, a suburb of Chicago. He went to Glen Ellyn about May 1, 1927, and did not return to his home, in Keota, until November 9, 1927. He came home, at that time, to take his wife to a hospital for an operation, and she was seriously ill and confined to her bed on the day of the search. After his wife's health improved, he went back to Glen Ellyn and had been working there ever since. He offered in evidence a written instrument purporting to be a lease of the west part of the premises, on which the stills, mash and moonshine whiskey were found, to Joe Testi, from April 15, 1927, to April 15, 1928, for a rent charge of $10 per month, and purporting to have been signed and acknowledged by the defendant and Joe Testi before George S. Thompson, a notary public, on April 8, 1927, with the official seal of said notary stamped thereon. He admitted that he had been convicted twice "for violation of the liquor law," and said he "quit fooling with liquor" when he was convicted the second time.

Three other witnesses, residents of Keota, testified that the defendant was not at his home, or in Keota, from May until late in the fall of 1927.

In rebuttal for the State, the sheriff and his deputy said that they had heard of Joe Testi, but had never seen him. The deputy sheriff said he had been "looking for him a couple of years."

I. The defendant's challenge of the sufficiency of the evidence must be sustained. It is admitted that the defendant owned the premises on which the stills, mash and whiskey were found, and that his dwelling house was in the same inclosure therewith and in close proximity thereto. It may be conceded, therefore, that there is some evidence tending to show that the defendant was in possession of said premises. And his possession of the premises and his constructive possession of the stills, mash and whiskey, might warrant the inference that he operated the stills, in the absence of the State's proof to the contrary. But, as shown above, the deputy sheriff testified, in substance and in effect, that he saw the defendant on the porch of his dwelling house at the time of the search; that the defendant did not operate the stills, nor make the whiskey, found on the premises; that he knew the man who operated the stills and made the whiskey; and that the man who operated the stills and made the whiskey was not there, anywhere on the premises, at the time of the search. In the face of this positive testimony, of the State's chief witness, that it was not the defendant, but another man, who committed the offense

charged, the defendant's guilt cannot be established by a mere inference drawn from other facts and circumstances in evidence. The testimony of the deputy sheriff leaves no room for such an inference and it does not obtain. (In this connection, see State v. Vinson, No. 29,862, currently decided by this court.). To put it in another way, the State cannot rely upon circumstantial evidence to support a conviction unless its proof as a whole tends to prove the guilt of the accused and is inconsistent with every reasonable hypothesis of his innocence. [16 C. J. 1011; State v. Perkins (Mo. Sup.), 18 S. W. (2d) 6.] It follows that the demurrer offered at the close of all of the evidence should have been sustained.

II. This disposition of the case renders it unnecessary to consider the other assignments of error.

In view of the deputy sheriff's testimony, no purpose would be served by remanding this cause for another trial. Accordingly, the judgment is reversed and the defendant discharged. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.